Phyllis SNELL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A04–0606–CR–302.

Court of Appeals of Indiana.

May 18, 2007.

Lisa M. Dirig, Allen County Public Defender's Office, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Phyllis Snell appeals from her conviction, after a jury trial, of count I, resisting law enforcement, a Class A misdemeanor, and count II, disorderly conduct, a Class B misdemeanor. Snell challenges the trial court's refusal of her tendered jury instructions related to constitutionally protected speech. We reverse, holding that the evidence supports giving the tendered instructions, and that Allen County Local Criminal Rule 9, requiring requests for instructions to be submitted prior to trial, is incompatible with the Indiana Trial Rule 51(C) allowing such requests at the close of evidence.

### Facts and Procedural History

On November 26, 2005, Maurice Brown helped a neighbor move into an apartment. After Brown left the neighbor's apartment, the neighbor suspected him of stealing her wallet from her purse. She walked down the street to Brown's home to confront him about the missing wallet. After Brown "started cussing and going off," the neighbor called police. Police officers arrived within minutes.

Snell was at Brown's home when the police arrived. The police first spoke with the neighbor. The police then went up to Brown's home, where they could see Brown through the open door. The neighbor watched from the top step of Brown's porch. She did not enter the house.

When the police officers went into Brown's home, Brown talked with them about the accusations that he had taken the wallet. However, Brown became angry and began loudly denying the theft and yelling to the neighbor, who was still outside of his house. When Brown refused the officers' request to compose himself, the police advised Brown he was being arrested for disorderly conduct. The officers ordered him to place his hands behind his back. Brown began to turn around. One officer knelt on him to hold him, while the other officer "took Brown to the ground." Tr. at 95.

While the police officers were in Brown's home, Snell was at first seated on a couch in the room with Brown. When the officers attempted to arrest Brown, Snell began to call out to the officers to stop hurting Brown. Snell stood up from a couch, approached the officers as they were attempting to place Brown under arrest, and continued screaming. Officers repeatedly informed Snell that she needed to calm down, stay back, and sit down. One officer, who was trying to keep Brown down, had to stop assisting in the arrest to keep Snell away and to ensure the remaining officers were not attacked. Snell stated, "Y'all motherfucking doing him wrong." Tr. at 111, 117–18. When Snell did not comply with the police officer's order to be quiet and sit down, another officer placed Snell under arrest. As the officer attempted to grab her wrist, Snell pulled away and tried to evade the officer.

On November 26, 2005, Snell was charged with resisting law enforcement, as a Class A misdemeanor, and disorderly conduct, as a Class B misdemeanor. Snell filed a Motion to Dismiss, and Memorandum of Law, in which she asserted her comments and noises were protected political speech directed towards the actions of the police officers. Her Motion to Dismiss was denied. Thereafter, a jury trial was conducted and, on April 20, 2006, Snell was convicted on both counts. The trial court sentenced Snell on count I to 365 days, suspended, and a twenty-five dollar fine, and on count II to 180 days, suspended, and a twenty-five dollar fine. Snell now directly appeals.

### Discussion and Decision

Snell challenges the trial court's refusal of her tendered jury instructions [1] pertaining to constitutionally protected speech, arguing her instructions were supported by sufficient evidence and the local rule used to bar the tendered instructions is incompatible with Indiana Trial Rule 51.

### I. Standard of Review

 The trial court has broad discretion in the manner of instructing the jury and we review its decision thereon only for an abuse of that discretion. *Stringer v. State*, 853 N.E.2d 543, 548 (Ind.Ct.App. 2006). We review the refusal of a ten-

---

1. We note Snell has failed to comply with the Rules of Appellate Procedure by failing to include in her appellate brief the language of her tendered instructions or any citation to her appendix where the tendered instructions can be found. *See* Ind. Appellate Rules 46(A)(8)(e); 50(B)(1)(c). However, the State has provided citation to the Appellant's Appendix pages containing two proposed jury instructions, and to the Appendix of Appellee containing the "Final Instructions of the Court," which state that the court indicates "before the arguments of counsel that the court will give the following final instructions." App. of Appellee at 14.

dered instruction by examining whether the tendered instruction correctly states the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the tendered instruction is covered by other given instructions. *Springer v. State*, 798 N.E.2d 431, 433 (Ind.2003). Jury instructions are to be considered as a whole and in reference to each other. *Stringer*, 853 N.E.2d at 548. The ruling of the trial court will not be reversed unless the instructions, when taken as a whole, misstate the law or mislead the jury. *Kelly v. State*, 813 N.E.2d 1179, 1185 (Ind.Ct.App.2004), *trans. denied.* Before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Stringer*, 853 N.E.2d at 548.

## II. Evidence Supporting Jury Instructions

The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Gravens v. State*, 836 N.E.2d 490, 493 (Ind.Ct.App.2005), *trans. denied.* In instructing a jury, the trial court has a statutory duty to state to the jury all matters of law that are necessary for its information in giving its verdict. Ind.Code § 35–37–2–2(5); *Dayhuff v. State*, 545 N.E.2d 1100, 1102 (Ind.Ct.App.1989), *trans. denied.* Each party to an action is entitled to have the jury instructed on his particular theory of complaint or defense. *Collins v. Rambo*, 831 N.E.2d 241, 245 (Ind.Ct.App.2005) (quotations omitted). "As a general rule, a defendant in a criminal case is entitled to have the jury instructed on any theory of defense which has some foundation in the evidence." *Howard v. State*, 755 N.E.2d 242, 247 (Ind. Ct.App.2001). This is so even if the evidence supporting the defense is weak and inconsistent. *Id.* However, the evidence must have some probative value to support the defense. *Id.*

Snell was convicted of disorderly conduct. A person commits disorderly conduct as a Class B misdemeanor when she recklessly, knowingly, or intentionally makes unreasonable noise and continues to do so after being asked to stop. *See* Ind. Code § 35–45–1–3(a)(2). Article I, section 9 of the Indiana Constitution provides, "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever; but for the abuse of that right, every person shall be responsible."

Prior to trial, Snell submitted two jury instructions addressing the protected speech provision of Article I, Section 9 of the Constitution of Indiana. The first proposed instruction states:

*Protected Speech*

You, as the trier of fact, are to decide whether the statements Ms. Snell is accused of saying fall under the protections of the [sic] Article I, Section 9 of the Indiana Constitution, which states:

> Section 9. No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible.

This requires a two step process, you must first decide whether a state action has, in the concrete circumstances of the case, restricted Ms. Snell's opportunity to engage in expressive activity. Second, if it has, you must decide whether the restricted activity constitutes an "abuse" of the right to speak under the Indiana Constitution.

Appellant's App. at 26. The second proposed instruction states:

> You as the trier of fact, must first determine whether the police officer's action in this case restricted Ms. Snell's opportunity to engage in expressive activity. Under the Indiana Constitution, expressive conduct is to be given a broad interpretation. It extends to any subject whatever, and reaches every conceivable mode of expression. Expressive activity is restricted when the state imposes a direct and significant burden on the person's opportunity to speak their [sic] mind, in whatever manner the speaker deems most appropriate[.]

*Id.* at 27.

Following the close of evidence and prior to closing argument, Snell submitted a "*Price*-type" instruction[2] to the trial court. Tr. at 136. The trial court refused the tendered instruction, explaining: "because of the local rule and also because I don't feel that some of the testimony I heard as what she was saying, what she was saying in a loud voice, what she was saying after she was told to stop, is protected." Tr. at 139.

Snell argues the trial court erred in denying her tendered instructions, claiming there was sufficient evidence to find her words were political speech. She asserts her comments went directly to the legality and appropriateness of the police conduct toward Brown, and as such, the tendered instruction was warranted.

 We must first determine whether the tendered instructions correctly state the law. A determination of the constitutionality of an application of the disorderly conduct statute involves first deciding whether state action has restricted a claimant's expressive activity. *Whittington v. State,* 669 N.E.2d 1363, 1367 (Ind. 1996). Second, if it has, the court must decide whether the restricted activity constituted an abuse of the right to speak. *Id.* Snell's tendered instructions correctly state the law.

 We next determine whether there is evidence in the record to support the giving of the instructions. With respect to the first prong of the test, we note that the right to speak clause focuses on the restrictive impact of state action on an individual's expressive activity. *Id.* at 1368. At a minimum, the clause is implicated when the State imposes a direct and significant burden on a person's opportunity to speak her mind, in whatever manner the speaker deems most appropriate. *Id.* Here, this condition is satisfied by Snell's arrest for disorderly conduct while screaming and swearing at police officers about their treatment of Brown. *See Price,* 622 N.E.2d at 956–57, 961–63 (where the defendant was found to have engaged in political speech when she screamed profanities at a police officer while objecting to the arrest of a third party); *Shoultz v. State,* 735 N.E.2d 818, 826–27 (Ind.Ct.App.2000), *trans. denied,* (where defendant was found to have engaged in political speech when it was directed to the legality and appropriateness of police conduct toward a third party and constituted criticism of an official acting under color of law); *Johnson v. State,* 719 N.E.2d 445, 449 (Ind.Ct.App.1999) (concluding that a person's conviction for making unreasonable noise based solely on his loud speaking during a police investigation

---

**2.** While the transcript reflects Snell's request for the court to give a *Price* instruction, the tendered instruction has not been included for this court to review on appeal. We note a *Price* instruction would address the defense of protected speech with respect to disorderly conduct. *See Price v. State,* 622 N.E.2d 954 (Ind.1993).

constitutes state action restricting a claimant's expressive activity).

Turning to the second prong of the analysis, we must consider whether the restricted activity constituted an abuse of the right of free speech. Generally, when reviewing the State's determination that a claimant's expression was an abuse of the right of free speech under the Indiana Constitution, we are required to find only that the State's determination was rational. *Madden v. State*, 786 N.E.2d 1152, 1156 (Ind.Ct.App.2003), *trans. denied.* However, if the claimant's speech giving rise to the disorderly conduct conviction is political, the State must demonstrate that it has not materially burdened the claimant's opportunity to engage in political expression. *Id.*

> Such expression is not materially burdened if the State produces evidence that the speech inflicted particularized harm analogous to tortious injury on readily identifiable private interests. To demonstrate the requisite level of harm, there must be evidence that the speech caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his privacy. Evidence of mere annoyance or inconvenience is insufficient.

*Shoultz*, 735 N.E.2d at 825–26.

A claimant's expressive activity is political, for purposes of Section 9, if its point is to comment on government action, including criticism of the conduct of an official acting under color of law. *Id.* The nature of the expression is judged by an objective standard, and the burden is on the claimant to demonstrate that his or her expression would have been understood as political. *Id.* If the expression is ambiguous, we must conclude the speech was non-political and review the constitutionality of the disorderly conduct conviction under standard rationality review. *Id.*

Here, Snell's restricted expressive activity was political in nature, as her speech was an expression of her disagreement regarding the police actions toward Brown. The neighbor heard Snell yelling at police while she was outside Brown's home. She stated she could hear police tell Snell to be quiet at least three times. When officers attempted to arrest Brown, Snell began making noise, yelled and cursed at the officers about the arrest and appeared aggressive. Officers repeatedly informed Snell that she needed to calm down and stay back. Instead, Snell stood up from the couch, approached the officers as they were attempting to place Brown under arrest, and continued screaming. One officer, who was trying to keep Brown down, had to stop assisting in the arrest in order to keep Snell away to ensure the remaining officers were not attacked. Another officer testified that he heard the police officers telling Brown to be quiet and that it took three officers to arrest Brown. He further stated that when police officers attempted to take custody of Brown, Snell began yelling and verbalizing her displeasure at what was happening. He stated Snell would not stay seated and that the police officers were concerned about the safety of the situation. Further, Snell was talking about how the police officers were treating Brown.

We conclude that Snell's comments prior to her arrest were directed to the legality and appropriateness of police conduct. Thus, she was engaged in political expression. Accordingly, there was evidence that supported the giving of an instruction addressing Snell's protected speech. The trial court erred in determining that the evidence did not warrant the giving of the proposed instruction.

■ The proffered instructions are correct statements of the law that are not covered by any other instructions,[3] and the evidence supports the giving of the instructions. Accordingly, the trial court erred in not giving the instructions. However, an error in the giving or refusing of an instruction is harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind.2001).

■ The State argues the trial court's refusal of the tendered instructions did not result in any prejudice to Snell and that a reasonable jury would have rendered a guilty verdict even if the tendered instructions had been given. While a defendant's protest "may implicate a core constitutional value, noisy political expression is not shielded from all criminal liability." *Madden*, 786 N.E.2d at 1157. Political expression is not materially burdened and becomes unreasonably noisy when it inflicts upon determinant parties harm analogous to that which would sustain tort liability against the speaker. *Price*, 622 N.E.2d at 964. The State asserts Snell's speech constitutes such an abuse of the right to free speech because one of the arresting officers indicated that from his estimation, Snell "could be audibly heard outside" and likely heard "across the street" and the neighbor who watched from Brown's front porch stated Snell was "yelling, screaming, telling [the police] they were wrong" and was "loud" and "real mad." Brief of Appellee at 8. The State asserts the resulting harm from Snell's actions rose above a mere fleeting annoyance, and the failure to include the instructions was harmless error.

The evidence supports giving an instruction on protected speech, as Snell's words

and actions that subjected her to the instant charges may be found to constitute political speech. Had the instruction been given, the jury would have been properly informed of a defendant's right to engage in expressive activity, and of the jury's burden to determine whether state action has restricted the expressive activity and if the restricted activity constituted an abuse of the right to speak. In this case, an instruction on protected speech was necessary for the jury to make a well-informed decision. Had the jury received an instruction on protected speech, the decision of the jury may have been different. The fact that the jury was not instructed on this particular defense cannot be said to be harmless error. Thus, the trial court erred in denying Snell's tendered instructions on the defense of protected speech.

### III. Conflict Between Local Rule 9 and Trial Rule 51

■ The trial court's refusal of Snell's tendered instructions was also based, in part, on Snell's failure to comply with Allen County Local Criminal Rule 9 ("local rule 9"). That rule requires that instructions be submitted not less than 1 day prior to trial, and specifically provides:

(A) All requests for jury instructions tendered in accordance with Criminal Rule 8 and Trial Rule 51 of the Indiana Rules of Trial Procedure must be submitted to the court, with proper citations of authority, not later than the day prior to the trial. Parties are encouraged to utilize the Indiana Pattern Jury Instructions whenever possible.

(B) Exceptions to this requirement will be made only when the matters on which the instruction is sought could not have been reasonably anticipated in advance of the trial. Proposed

---

**3.** The State's Appendix includes the final jury instructions. *See* App. of Appellee at 14–26.

instructions need not be exchanged by counsel until after the evidence has been submitted.

Appellee's App. at 27–28.

Snell asserts local rule 9 is incompatible with Indiana Trial Rule 51. Indiana Trial Rule 51(A) allows a party to submit its requests for jury instructions before trial begins: "[t]he parties shall be given reasonable opportunity to submit requested instructions prior to the swearing of the jury, and object to instructions requested or proposed to be given." However, Trial Rule 51(C) provides, "[a]t the close of the evidence and before argument each party may file written requests that the court instruct the jury on the law as set forth in the requests."

 Trial courts may establish rules for their own governance if those rules are not inconsistent with the rules prescribed by the supreme court or any statute. *S.T. v. State*, 764 N.E.2d 632, 635 (Ind.2002); Ind.Code § 34–8–1–4. "A local rule that is inconsistent with the Trial Rules is deemed to be without force and effect." *Spudich v. N. Ind. Pub. Serv. Co.*, 745 N.E.2d 281, 286 (Ind.Ct.App.2001), *trans. denied.* A conflict exists between the rules if both could not apply in a given situation. *Id.*

Snell states local rule 9 is incompatible with Trial Rule 51 in that it impermissibly constrains the tender of jury instructions to submission prior to the day of trial, when Trial Rule 51 allows the tender of such instructions after the close of evidence. Trial Rule 51 delineates between preliminary instructions and final instructions; local rule 9 does not. As final instructions are colored by the evidence admitted during the trial, local rule 9 would be incompatible as to the requirements pertaining to final instructions.

Snell asserts application of local rule 9 has left her in a detrimental position. At the close of evidence, the trial court indicated it would consider any instruction to be tendered by counsel. Further, the trial court acknowledged the local rule has historically not been enforced. Also, the prosecutor admitted to the court he was unaware of the rule and noted he would not base his objection to Snell's request to instruct the jury on protected speech on her failure to comply with the local rule.

Snell also points out her motion to dismiss and supporting memorandum raised the issue of the defense of free speech. Snell states in her brief that following a hearing on the motion to dismiss, the trial court determined that this was a question of fact within the province of the jury.[4] Appellant's Br. at 13. By refusing the instructions, the trial court prevented the issue from being properly put in front of the jury, according to Snell.

The State argues local rule 9 is not inconsistent with Trial Rule 51(a), which states that a party shall have a "reasonable opportunity" to submit proffered instructions, in that local rule 9 merely defines the parameters of a "reasonable opportunity." The State asserts the actual application of local rule 9 allowing a party to submit proposed instructions up until the day before trial is not incompatible with Trial Rule 51(A)'s requirement of a reasonable opportunity to submit instructions to the trial court prior to trial. Thus, the State claims the context and application of local rule 9 indicate it is only applicable to Trial Rule 51(A), as both expressly apply prior to trial.

---

4. The transcript does not provide the hearing on the motion to dismiss. Thus we cannot verify Snell's argument on this point. However, the State does not challenge her assertion.

Conversely, Trial Rule 51(C) permits a party to object and to request instructions "[a]t the close of evidence and before argument[.]" Thus, the State agrees the application of local rule 9 to instructions tendered after the close of evidence would be inconsistent with Trial Rule 51(C).

Even if the erratic application of local rule 9 was improper or the trial court incorrectly applied the local rule to instructions offered after the close of evidence, the State argues Snell was not prejudiced. The State points out that the trial court considered the instructions following the presentation of evidence. The trial court denied Snell's proffered instruction stating it did so "because of the local rule and also because I don't feel that some of the testimony I heard as what she was saying .... is protected." Tr. at 139. Thus, the State maintains, despite the court's reference to the local rule, the trial court actually considered the proffered instruction and complied with Trial Rule 51(C) and the instruction was ultimately considered on its merits and refused.

In this case, the evidence supported instruction on the defense of protected speech and Snell's tendered instructions were not covered by any given instruction. Trial Rule 51(C) clearly allows for the tender of jury instructions after the close of evidence inasmuch as consideration of final instructions is often colored by the evidence admitted. This conflicts with the language of local rule 9. Local rule 9 is incompatible with Trial Rule 51 in that it impermissibly constrains the tender of jury instructions to submission prior to the day of trial, when Trial Rule 51 clearly allows the tender of such instructions after the close of evidence. We agree this incompatibility could leave a defendant in a detrimental position. As a practical matter, a party would be unable to tailor the instructions to fit the evidence if the proposed instructions must be submitted before the close of evidence. Based on this incompatibility between local rule 9 and Trial Rule 51, we find the trial court should not have applied local rule 9 to bar the tendered instruction here.

### Conclusion

The trial court abused its discretion in refusing to give Snell's tendered instructions on protected speech inasmuch as the evidence supported the instructions and local rule 9 is not compatible with Trial Rule 51. Thus, the jury was not properly instructed. Accordingly, we reverse the convictions and remand for a new trial.

Reversed and remanded.

BAKER, C.J., and DARDEN, J., concur.