**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STEVEN R. KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT V. KIRTS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  79A02-1202-CR-122 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1106-FB-20

**October 24, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Robert V. Kirts appeals his convictions for Operating a Vehicle While Intoxicated Resulting in Death,[1] a class C felony, and Failure to Stop After an Accident Resulting in Death,[2] a class C felony. Specifically, Kirts argues that the trial court erred in refusing to give his tendered instruction regarding causation of death. Kirts also maintains that convicting him of both offenses violates double jeopardy principles. Finding no error, we affirm the judgment of the trial court.

FACTS

In the early afternoon of February 27, 2011, Kirts left his home and drove to Champs Sports Bar (Champs) in Lafayette to watch a NASCAR race with some friends. While at Champs, Kirts drank two beers and a double shot of American Honey, a bourbon liqueur. At approximately 4:30 p.m., Kirts drove to Hops, another tavern in Lafayette, drank three beers, ate a sandwich, and left around 6:00 p.m. Kirts returned to Champs and bought a bucket of beer with a friend of his. The bucket contained five bottles or cans of beer, and Kirts drank half of them. Kirts also drank two shots of "liquid cocaine." Tr. p. 204, 217.[3]

Kirts left Champs at approximately 8:30 p.m. While driving on State Road 25, Kirts struck thirteen-year-old Ebony Knight with his Jeep as she and her cousin, Lavaria Bryant, were walking in the gravel on the side of the road. Kirts struck Ebony from

---

[1] Ind. Code § 9-30-5-5(a)(3).

[2] Ind. Code § 9-26-1-1(1)(2).

[3] This drink consists of one part Rumple Minze (a mint liqueur like Schnapps) and one part Jagermeister. Tr. p. 204.

behind, and she was swept into the road on the front bumper of Kirts's Jeep. As Lavaria watched, she saw Ebony slide off the front of the Jeep to the pavement where Kirts ran over her.

A witness who was pumping gas nearby observed Kirts's Jeep go "off the ground" like it "had hit a speed bump pretty, pretty solid, you know, at a good rate of speed." Tr. p. 64-65. Only a split second after running over Ebony, Kirts accelerated and sped away from the accident. Ebony sustained massive trauma to her head, neck, and abdomen, and died at the scene.

When Kirts arrived home at approximately 9:00 p.m., he told Lisa, his wife, that she needed to help him because he "hit something or someone," and he thought it may have been a deer. Tr. p. 229. Kirts's Jeep was badly damaged. The hood had caved in and a chunk of the grill was missing. At that point, Kirts told Lisa that a woman had sideswiped him on U.S. 231 as he was driving home. Although Lisa suggested contacting the police, Kirts did not want to because they both "knew that he had been drinking." Id. at 231. Lisa could tell that Kirts was intoxicated because he was swaying back and forth, "rocking a little," and his speech was "slow." Id. at 232. Kirts proposed that he hide the Jeep at Lisa's relatives for a while. Lisa refused, but Kirts commented that they "really needed to hide it for a long time, for a few days." Id.

The next day, Lisa called her mother and learned that a girl had been killed by a motorist on State Road 25 the previous night. Kirts denied knowing anything about the accident. The police were provided with a description of the vehicle, and on February 28,

2011, Officer James Wilkerson of the Lafayette Police Department saw Kirts's Jeep parked in the driveway with damage that was consistent with having recently been in an accident. Officer Wilkerson called another officer to the scene and attempted to determine the owner of the vehicle. Lisa saw the officers outside and woke up Kirts. Kirts started to cry when Lisa told him that the police were at their residence.

Kirts walked outside and admitted to Officer Wilkerson that he had hit something and did not stop. Kirts explained that he was going to check the damage when he got home and stated that he "knew what he had hit" because he had watched the news that morning. Tr. p. 147. Kirts also told Officer Wilkerson that he had intended to turn himself into the police that afternoon.

Kirts was transported to the police station where he gave a statement to Detective Mathew Devine. Id. at 155. Kirts initially denied drinking at all and stated that he had been home all day watching the race. Kirts gave a second statement to Detective Devine the next day, stating that he "remembered" going to Hops for a couple of hours around 1:00 p.m., drinking two beers with lunch, and then driving to Rossville to visit a friend. After discovering that his friend was not home, Kirts stated that he drove around "for a couple of hours" before stopping at a gas station to buy cigarettes. State's Ex. 96.

On June 14, 2011, Kirts was charged with the following offenses:

Count I—Operating a Vehicle While Intoxicated Resulting in Death, a class C felony;

Count II—Reckless Homicide, a class C felony;

4

Count III—Failure to Stop After an Accident Resulting in Death, a class C felony;

Count IV—Failure to Give Notice of an Accident Resulting in Death, a class C misdemeanor; and

Count V—Operating a Vehicle While Intoxicated While Having a Prior Conviction for Operating While Intoxicated Resulting in Death, a class B felony.

Appellant's App. p. 15-19.

A three-day jury trial was held on November 15-17, 2011. At the close of the evidence, Kirts moved for a directed verdict on Counts I and II. The trial court denied Kirts's motion with respect to Count I, but granted his motion as to Count II.

During a conference regarding jury instructions, Kirts requested the trial court to instruct the jury about the distinction between a substantial cause and a contributing cause. Kirt desired that the jury be instructed to return a not guilty verdict if it found that Kirts's actions were merely a "contributing cause" of Ebony's death. Tr. p. 285. More particularly, Kirts's tendered instruction provided that "the State must prove the Defendant's operating a motor vehicle while intoxicated was a substantial cause of the resulting death, not a mere contributing cause." Tr. p. 285.

The trial court refused to give Kirts's tendered instruction, and the jury found Kirts guilty on Counts I, III, and IV. Kirts admitted guilt as to Count V. On January 27, 2012, Kirts was sentenced to seven years on Count I, seven years on Count III, sixty days on Count IV, and eighteen years on Count V. Count I was merged with Count V. The sentences in Counts III and IV were to be served concurrently with one another, but

consecutively to Count V, for an aggregate term of twenty-five years of incarceration. The trial court suspended three of those years to probation, and Kirts now appeals.

DISCUSSION AND DECISION

I. Instructions

Kirts argues that his conviction for operating a vehicle while intoxicated resulting in death must be reversed because the trial court erred in not giving his tendered instruction regarding the cause of Ebony's death. Specifically, Kirts maintains that the trial court should have given his tendered instruction because "causation was not defined for the jury, which had to decide whether [Kirts's] driving behavior was the cause or a cause of the resulting death." Appellant's Br. p. 12.

In resolving this issue, we initially observe that the trial court has broad discretion in the manner of instructing the jury, and we will review its decision only for an abuse of that discretion. Snell v. State, 866 N.E.2d 392, 395 (Ind. Ct. App. 2007). Jury instructions are to be considered as a whole and in reference to each other. Stringer v. State, 853 N.E.2d 543, 548 (Ind. Ct. App. 2006). The trial court's ruling will not be reversed unless the instructions, when taken as a whole, misstate the law or mislead the jury. Kelly v. State, 813 N.E.2d 1179, 1185 (Ind. Ct. App. 2004). Additionally, before we will reverse, the defendant must establish that the erroneous instruction prejudiced his or her substantial rights. Stringer, 853 N.E.2d at 548.

When reviewing a challenge to a jury instruction, we will consider whether the instruction correctly states the law, whether there was evidence in the record to support

6

the giving of the instruction, and whether the substance of the instruction is covered by other instructions given by the trial court.  Hubbard v. State, 742 N.E.2d 919, 921 (Ind. 2001).  The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable the jury to comprehend the case clearly and arrive at a just, fair, and correct verdict.  Snell, 866 N.E.2d at 396.  Each party to an action is entitled to have the jury instructed on that party's particular theory of complaint or defense.  Id.

Although Kirts's instruction was rejected, the trial court instructed the jury as follows:

The crime of operating a vehicle while intoxicated is defined by law as follows:

A person who operates a vehicle while intoxicated commits a Class C misdemeanor.  The offense is a Class C felony if the person causes the death of another person.

Before you may convict the Defendant of a Class C Misdemeanor, the State must have proved each of the following elements beyond a reasonable doubt:
1.  The Defendant
2.  Operated a vehicle
3.  While intoxicated.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you must find the Defendant guilty of the crime of operating a vehicle while intoxicated, a Class C misdemeanor.

If the State further proved beyond a reasonable doubt that said defendant, while operating a vehicle while intoxicated, caused the death of Ebony

7

Knight, you must find the Defendant guilty of operating a vehicle while intoxicated causing death, a Class C felony.

Appellant's App. p. 54.

In our view, this instruction adequately informed the jury that the State had the burden to prove that Kirts caused Ebony's death. Also, the language set forth in Kirts's tendered instruction would likely have shifted the focus from whether, while in an intoxicated state, Kirts caused Ebony's death to whether Kirts's intoxicated driving caused Ebony's death. The State is not required to prove a causal link between a driver's intoxication and the injury. Abney v. State, 766 N.E.2d 1175, 1178 (Ind. 2002). That said, we reject Kirts's reliance on Abney for the proposition that his proposed instruction should have been given.

In Abney, the jury was instructed that it could convict the defendant if the State had proven that the defendant's "driving conduct was a contributing cause" of the victim's death. Id. at 1176. However, unlike the circumstances here, Abney presented a theory at trial that another vehicle hit a bicyclist first and that Abney hit him only after the first accident that occurred. Id. at 1178. It was ultimately determined that the trial court had erred in giving an instruction permitting the jury to convict if it found that Abney's driving conduct was a contributing cause. Id. On the other hand, the instruction that Abney had tendered read:

> If you find that the defendant's conduct caused the accident that produced the death of the victim, the State has proven the element of "causation." However, if you find that someone else's conduct caused the accident, you should find the defendant not guilty. . . .

Id. at 1176. The use of the word "caused" in the tendered instruction was specifically noted, and it was determined that the trial court erred in refusing to give the defendant's proposed instruction in light of the circumstances. Id. at 1178.

Here, Kirts admits that the instruction the trial court gave is not incorrect. Rather, his objection is that the instruction fails to define "causation." Appellant's Br. p. 20. However, Kirts's instruction similarly does not define causation and layers on top of the common sense notion of causation legal terms that are likewise not defined for the jury. Also, the instruction that the Supreme Court approved in Abney, on which Kirts relies, did not define causation. As noted above, the instruction used the word "caused," thus leaving it to the jury to apply a commonsense understanding of the word. See Abney, 766 N.E.2d at 1186 (observing that the refusal to give Abney's instruction and instructing as to the lesser standard of contributing cause was error). Because Kirts's instruction might very well have led a jury to believe that the State bore the burden of proving a causal link between a driver's intoxication and the injury, it is an incorrect statement of the law. Also, Kirts's proposed instruction would have misled and misinformed the jury. As a result, we conclude that the trial court properly refused to give Kirts's tendered instruction.

## II. Double Jeopardy

Kirts next argues that his convictions for both operating a vehicle while intoxicated resulting in death and failure to stop after an accident resulting in death

9

violate the prohibition against double jeopardy under Article I, Section 14 of the Indiana Constitution. Specifically, Kirts maintains that "the enhancement of the failure to stop after an accident offense from a class A misdemeanor to a class C felony because of a resulting death was for the same harm as that named in count I, operating while intoxicated causing death." Appellant's Br. p. 13. As a result, Kirts maintains that his conviction for failing to stop after an accident should be reduced to a class A misdemeanor.

The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. In Richardson v. State, our Supreme Court developed a two-part test for Indiana double jeopardy claims, holding that

> two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

717 N.E.2d 32, 49 (Ind. 1999).

There is also a series of rules of statutory construction and common law that are often described as double jeopardy, but which are not governed by the constitutional test set forth in Richardson. Pierce v. State, 761 N.E.2d 826, 830 (Ind. 2002). One of these rules is that double jeopardy is violated where "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished."

Guyton v. State, 771 N.E.2d 1141, 1142 (Ind. 2002) (quoting Richardson, 717 N.E.2d at 56 (Sullivan, J., concurring)).

In accordance with these non-constitutional double jeopardy prohibitions, we note that Kirts presents the same argument that a different panel addressed in McElroy v. State, 864 N.E.2d 392 (Ind. Ct. App. 2007). In McElroy, it was determined that convictions for the two offenses about which Kirts complains here do not run afoul of double jeopardy principles. In particular, it was held in McElroy that the defendant had been punished for one act—causing the victim's death—and a second, sequential act—failing to stop after the accident. Id. at 398. It was also observed that the punishments were for distinct acts, and the enhancement for fleeing the scene of an accident was a policy decision of the legislature in finding that fleeing from an accident where someone dies is more serious than fleeing from a less serious accident. Id. The McElroy Court also determined that the facts before it did not present a case where "a defendant has been convicted of one crime for engaging in the specified additional behavior or causing the specified additional harm and that behavior or harm has been used as an enhancement of a separate crime." Id.

Although Kirts acknowledges the holding in McElroy, he contends that the wrong result was reached "and that the ruling should be reconsidered." Appellant's Br. p. 25. We decline Kirts's invitation because, like the result reached in McElroy, we find that the punishment imposed upon Kirts for the two offenses was for the commission of separate

11

and distinct acts. Therefore, we affirm Kirts's convictions and find no double jeopardy violation.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.