**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 28 2012, 10:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**VICTORIA CHRIST**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHNNY C. HORTON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1206-PC-316 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
The Honorable Amy J. Barbar, Magistrate
Cause No. 49G02-0802-PC-44892

December 28, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Johnny C. Horton appeals the post-conviction court's denial of his petition for post-conviction relief. Horton raises a single issue for our review, which we restate as whether his trial or appellate counsel rendered ineffective assistance. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts underlying Horton's convictions were stated by this court in his direct appeal:

> In February 2008, Alicia Everman was residing at an Indianapolis townhouse with her eleven-month-old daughter and Alicia's cousin, Barbara Walls. Alicia's sister, Ashley, had also been staying at the home for the past couple of weeks. At approximately 1:00 a.m. on February 22, 2008, Ashley was cleaning the residence when she heard a knock at the door. At the time, Alicia's boyfriend, Andrew Allen ("Allen"), was sitting at the dining room table. Ashley eventually opened the door and saw three men standing in the hallway wearing hooded sweatshirts pulled up and over their heads to partially cover their faces. Ashley attempted to close the door, but one or more of the men forced their way inside. The three men were later identified as James Bryant, Curtis Brandon, and Horton.

> The men forcefully seated Ashley at the table in the dining room with Allen and asked her where her money was located. When she did not immediately provide the information, Bryant struck her in the head with his handgun. Eventually, Ashley told them her purse was in the living room, and Bryant and Brandon led her to the living room. Horton stayed in the dining room with Allen and kept his gun pointed at Allen, while the other two men went through the house with Ashley.

> After going through upstairs bedrooms, and taking money and possessions from purses and drawers, Bryant and Brandon brought Ashley back downstairs to the dining room. After about five minutes, the three men moved Ashley and Allen from the dining room into the living room, where Bryant and Brandon tied Ashley and Andrew with audiovisual and DVD cords as Horton kept a gun pointed at them. The three men then left the residence. Soon thereafter, police apprehended Brandon, Bryant, and Horton at the apartment complex and arrested them.

On February 25, 2008, the State charged Horton with twelve offenses: burglary as a Class A felony, four counts of criminal confinement as Class B felonies, carrying a handgun without a license as a Class A misdemeanor, pointing a firearm as a Class D felony, battery as a Class C felony, robbery as a Class B felony, intimidation as a Class C felony, and two counts of theft as Class D felonies. Bryant, Brandon, and Horton were tried together before a jury on November 17 and 18, 2008.

The jury found Horton guilty of all charges. However, at the December 2008 sentencing hearing, the trial court vacated two criminal confinement convictions, ordered the battery conviction merged with the burglary and robbery convictions, and reduced the robbery count to a lesser felony. The court sentenced Horton to a total executed term of thirty-one years: twenty-five years for the burglary conviction and six consecutive years for the Count 8 criminal confinement conviction; all other sentences were ordered to be served concurrently, including the Count 6 pointing a firearm conviction, for which he received a one and one-half year sentence. Horton now appeals, asking us to vacate the pointing a firearm conviction.

Horton v. State, No. 49A04-0901-CR-15, 912 N.E.2d 917, *1 (Ind. Ct. App. Sept. 9, 2009) (emphasis added; footnote omitted) ("Horton I"). On appeal, we agreed with Horton's appellate counsel that his conviction for pointing a firearm violated Indiana's constitutional protections against double jeopardy. Id. at *3-4.

On January 17, 2012, Horton filed his amended petition for post-conviction relief. In his petition, he alleged that his trial counsel rendered ineffective assistance when he failed to object to jury instruction #24, which defined the term "breaking" for purposes of the burglary allegation. Horton further alleged that he had been denied the effective assistance of appellate counsel when his appellate counsel did not raise the same issue on direct appeal. The post-conviction court found that neither of Horton's attorneys rendered deficient performance and that, in any event, any error was harmless. This appeal ensued.

3

**DISCUSSION AND DECISION**

Horton asserts that the post-conviction court erred when it denied his petition for relief. As we have explained:

> [The petitioner] bore the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. See Ind. Post-Conviction Rule 1(5); Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001). Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. Timberlake, 753 N.E.2d at 597. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. Id. If an issue was known and available, but not raised on direct appeal, it is waived. Id. If it was raised on appeal, but decided adversely, it is res judicata. Id.
>
> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. Hall v. State, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. Id. at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. See Timberlake, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. Id.

Lindsey v. State, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), trans. denied.

Here, Horton contends that he was denied the effective assistance of trial and appellate counsel. A claim of ineffective assistance of counsel must satisfy two components. Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine

4

confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different.  Id. at 694.

Specifically, Horton contends that his trial counsel was ineffective when he failed to object to jury instruction #24.  In order to establish that counsel's failure to object to a jury instruction was ineffective assistance of counsel, a defendant must first prove that a proper objection would have been sustained.  Potter v. State, 684 N.E.2d 1127, 1132 (Ind. 1997).  Furthermore, defendant must prove that the failure to object was unreasonable and resulted in sufficient prejudice such that there exists a reasonable probability the outcome would have been different.  Id.  Likewise, to show that appellate counsel was ineffective for failing to raise an issue on appeal, the defendant must show, along with deficient performance, that "the issues which . . . appellate counsel failed to raise would have been clearly more likely [than the raised issues] to result in reversal or an order for a new trial."  Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006) (quotation omitted). "Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal."  Id. at 1196.

When reviewing a challenge to a jury instruction, we will consider whether the instruction is a correct statement of law, whether there was evidence in the record to support giving the instruction, and whether the substance of the instruction is covered by other instructions given by the court.  Hubbard v. State, 742 N.E.2d 919, 921 (Ind. 2001). "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict."  Snell v. State, 866 N.E.2d 392, 396 (Ind. Ct. App. 2007).

However, "an error in the giving or refusing of an instruction is harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." Id. at 399.

Here, jury instruction #24 stated, in relevant part, that a "breaking" is "an illegal and unconsented entry, no matter how slight or minimal. . . . It is enough to show that even the slightest force was used to gain entry. Even the opening of an unlocked door is sufficient . . . ." Appellant's App. at 151. On appeal, Horton asserts that the language of the instruction has been disapproved of by this court and that allowing the jury to hear the instruction undermined his trial counsel's defense that one of the victims, Ashley, testified that she had opened the door for Horton.

We cannot agree that Horton has shown prejudice on this issue.[1] Horton's argument here is premised on a misreading of Ashley's testimony. According to Horton, Ashley "originally said that she opened the door" for Horton. Appellant's Br. at 9. But that is not correct. During her testimony on direct examination, the State asked Ashley if she was able to "get the door shut" when she observed Horton and his cohort outside. Ashley responded, "No. . . . It kind of pushed back on me and pushed me all the way to the wall, and then I fell . . . on the stairs." Appellant's App. at 176.

Thus, contrary to Horton's assertions on appeal, Ashley's testimony at trial was that she had opened the door a crack, saw multiple people outside wearing hooded sweatshirts pulled up to hide their faces, tried to close the door, and then had the door forcibly pushed back open such that it caused her to fall down. Further, Allen, who was

---

[1] Because Horton cannot show that he was prejudiced by the instruction, we need not consider his additional argument that this court has disapproved of the language of the instruction in our prior decisions.

nearby when Ashley answered the door, testified that he heard a commotion at the door after Ashley went to open it. As we acknowledged in our opinion on direct appeal, "one or more of the men forced their way inside." Horton I, 912 N.E.2d 917 at *1.

Accordingly, the evidence at Horton's trial demonstrated that a forcible entry had occurred. Thus, Horton cannot show that any deficiencies in jury instruction #24 affected the trial's outcome. Stated another way, Horton cannot demonstrate that, had his trial counsel or his appellate counsel raised this issue to the trial court or on direct appeal, the result of either proceeding would have been different. See Strickland, 466 U.S. at 694. Hence, the post-conviction court did not err when it denied Horton's petition for post-conviction relief.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.