**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LISA DIANE MANNING**
Manning Law Office
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUSTIN LAND, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1212-CR-546 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Stephenie LeMay-Luken, Judge
Cause No. 32D05-1107-FB-48

**July 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Justin Land appeals his conviction for causing death while operating a motor vehicle, as a Class B felony, following a jury trial. We consider the following issues on appeal:

1. Whether the trial court committed fundamental error when it instructed the jury on the statutory elements of the offense.

2. Whether the trial court committed fundamental error when it instructed the jury on implied consent.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 2, 2011, Land was driving on Main Street in Danville with his daughter in the back seat. Land was distracted by his daughter as he approached the intersection of Main Street and Old Farm Road. The stoplight at the intersection turned green for drivers on Old Farm Road, and Jill Guthrie proceeded to turn left from Old Farm Road onto Main Street. Land's SUV hit Guthrie while she was making the turn. Guthrie died at the scene.

When officers arrived at the scene, Danville Police Officer Dane Morgan advised Land of the implied consent law, and Land agreed to submit to a chemical test. Officer Shawn Rout accompanied Land in an ambulance to the hospital for a blood draw and then brought the blood samples back to the police department. Subsequent testing of Land's blood disclosed that it was positive for benzoylecgonine, a metabolite of cocaine, at 360 nanograms per milliliter.

2

The State charged Land with causing death while operating a motor vehicle, as a Class B felony; reckless homicide, as a Class C felony; no financial responsibility, an infraction; and failure to stop at an automatic signal, an infraction. Following a one-day trial, a jury found Land guilty of causing death while operating a motor vehicle, as a Class B felony, and both infractions. The trial court sentenced Land to fifteen years, with five years suspended and five years of probation. Land now appeals his felony conviction.

## DISCUSSION AND DECISION

### Standard of Review

The trial court has broad discretion in the manner of instructing the jury, and we will review its decision only for an abuse of that discretion. Snell v. State, 866 N.E.2d 392, 395 (Ind. Ct. App. 2007). Jury instructions are to be considered as a whole and in reference to each other. Stringer v. State, 853 N.E.2d 543, 548 (Ind. Ct. App. 2006). The trial court's ruling will not be reversed unless the instructions, when taken as a whole, misstate the law or mislead the jury. Kelly v. State, 813 N.E.2d 1179, 1185 (Ind. Ct. App. 2004), trans. denied. Additionally, before we will reverse, the defendant must establish that the erroneous instruction prejudiced his or her substantial rights. Stringer, 853 N.E.2d at 548.

When reviewing a challenge to a jury instruction, we will consider whether the instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the instruction is covered by other instructions given by the trial court. Hubbard v. State, 742 N.E.2d 919, 921 (Ind.

3

2001). The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable the jury to comprehend the case clearly and arrive at a just, fair, and correct verdict. Snell, 866 N.E.2d at 396. Each party to an action is entitled to have the jury instructed on that party's particular theory of complaint or defense. Id.

Land did not object to the jury instructions at trial. The failure to object to a jury instruction given by the trial court waives the issue for review. Quiroz v. State, 963, N.E.2d 37, 42 (Ind. Ct. App. 2012), trans. denied. To avoid waiver, Land alleges that the alleged instructional errors constitute fundamental error. Fundamental error is error that represents a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. Ritchie v. State, 809 N.E.2d 258, 273 (Ind. 2004) (citation omitted). The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. Id. In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. Id. The element of harm is not shown by the fact that a defendant was ultimately convicted. Id. at 273-74. Rather, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. Id. at 274.

## Issue One:  Causation Instruction

Land first contends that the trial court committed fundamental error when it instructed the jury on the offense of causing death while operating a vehicle, as a Class B felony.  In particular, he argues that the court did not correctly instruct the jury on the elements of the offense, including causation.  We address each contention in turn.

The State charged Land under Indiana Code Section 9-30-5-5.  That statute provides, in relevant part, that "[a] person at least twenty-one (21) years of age who causes the death of another person when operating a vehicle . . . with a controlled substance listed in schedule I or II of IC 35-48-2 or its metabolite in the person's <u>blood</u> . . . commits a Class B felony."  Ind. Code § 9-30-5-5(b)(2) (emphasis added).  The trial court instructed the jury on the offense as follows:

> The crime of Causing Death While Operating a Motor Vehicle with a Controlled Substance charged in Count 1 is defined by statute as follows:
>
> To convict the Defendant, the State must prove each of the following elements beyond a reasonable doubt:
>
> 1.    The Defendant, Justin Land
>
> 2.    operated a vehicle
>
> 3.    with a controlled substance or its metabolite listed in Schedule I or II, namely[,] Benzoylecgonine (Cocaine)
>
> 4.    in the Defendant's <u>body</u>;
>
> 5.    and at the time of operation, the Defendant was twenty-one (21) or more years of age; and
>
> 6.    Defendant's operation of the vehicle caused the death of Jill Guthrie.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty of Causing Death While

5

> Operating a Motor Vehicle with a Controlled Substance, a Class B felony charged in Count 1.

Appellant's App. at 187 (emphasis added). Land contends that the use of "body" in the jury instruction instead of "blood" as stated in Section 9-30-5-5(b)(2) deprived him of a fair trial because the jury was instructed on a different offense than the one charged. We cannot agree.

Final Instruction Number 5 erroneously refers to finding the controlled substance or its metabolite in the body. Although based on Pattern Jury Instruction 7.113, the law defining that instruction was superseded when the legislature amended Indiana Code Section 9-30-5-5 in 2004 to add the offense charged here. Thus, Land is correct that the pattern jury instruction on operating a vehicle with a Schedule I or II controlled substance in the blood, as a Class B felony, is not a correct statement of the law.

But, again, Land did not object to the instruction below and, therefore, he must show that the error was fundamental in order to prevail on appeal. And an error is harmless if the "probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." Ind. Appellate Rule 66(A). And we must consider the jury instructions as a whole and in reference to each other. See Stringer, 853 N.E.2d at 548. Here, the final instructions erroneously referred to a controlled substance in the body instead of in the blood. But the trial court correctly stated the name of the charge as "Operating a Vehicle With a Schedule I or II Controlled Substance in the Blood[,]" as a Class B felony, and restated the elements of the charge in Preliminary Instruction Number 4 and Final Instruction Number 3. Appellant's App. at

6

184-1 to 185-1, 186-2.[1] More importantly, the relevant evidence showed that a controlled substance was found only in Land's blood, in his body. There was no evidence regarding the presence of a controlled substance anywhere else in his body. Under these circumstances, the jury did not confuse the offense charged with a lesser offense that required the existence of a controlled substance somewhere in the body (such as in urine) but not necessarily in the blood. See Ind. Code § 9-30-5-1(c) ("A person who operates a vehicle with a controlled substance in schedule I or II of IC 35-48-2 or its metabolite in the person's body commits a Class C misdemeanor."). As such, Land has not shown that the court's erroneous instruction, referring to a controlled substance in the body instead of in the blood, constitutes fundamental error.

Land next contends that the instruction on the same offense constitutes fundamental error because the jury "[w]as [g]iven the [w]rong [d]efinition of [c]ausation." Appellant's Brief at 10. Specifically, Land argues that the jury should have been but was not instructed that it had to find that his conduct was a proximate cause of Guthrie's death. Land misunderstands the law.

Again, Indiana Code Section 9-30-5-5(b)(2) requires the State to show that:

1. Land

2. operated a vehicle

3. with a controlled substance or its metabolite listed in Schedule I or II in his blood,

4. while at least twenty-one years old, and

---

[1] The page following page 190 in Appellant's Appendix begins numbering again at 183. Thus, pages 183 to 190 are found twice in the appendix. To the extent the pages we cite are from the duplicated pages numbers, pages 183 to 190, we indicate the actual page with an additional -1 or -2 to indicate the page intended.

5. his operation of the motor vehicle caused Guthrie's death.

We described the State's burden on causation in Rowe v. State, 867 N.E.2d 262 (Ind. Ct. App. 2007). There, Rowe argued that the evidence was insufficient to support her convictions under Section 9-30-5-5 because her "operation of an ATV with Carboxy-THC in her blood[,]" a metabolite of marijuana, did not cause the deaths of the two victims. Id. at 268. We disagreed, explaining:

> In support of her contention, Rowe directs us to Abney v. State, 766 N.E.2d 1175, 1177 (Ind. 2002), where our supreme court held that a conviction for operating while intoxicated causing death requires proof that the defendant's operation of a motor vehicle while intoxicated was a "substantial cause" of the resulting death, not a mere "contributing" cause. The court in Abney restated the well-settled rule established in Micinski v. State, 487 N.E.2d 150, 154 (Ind. 1986), that the State must prove that the defendant's conduct was a proximate cause of the victim's injury or death. Id. at 1178. But "conduct," in the context of Micinski and Abney, means the driver's act of operating the vehicle, not the particular manner in which the driver operates the vehicle. Spaulding v. State, 815 N.E.2d 1039, 1042 (Ind. Ct. App. 2004).

867 N.E.2d at 268.

Land contends that the jury instruction "wrongfully [sic] states that Land's conduct is taken to mean his act of operating the vehicle, not any particular way in which he operated the vehicle." Appellant's Brief at 11. But, as explained above in Rowe, the particular manner of driving the vehicle is not at issue under Section 9-30-5-5. Rather, the issue is whether the act of driving, while having a Schedule I or II controlled substance or its metabolite in the blood, caused Guthrie's death.

Again, to show the causation element under Section 9-30-5-5, the State was required to show only that Land's operation of the vehicle, while he had a Schedule I or

II controlled substance or its metabolite in his blood, caused Guthrie's death. The trial court instructed the jury:

> Causing death requires proof that the Defendant's operation of a motor vehicle was a substantial cause of the resulting death, not a mere contributing cause. The State must prove the Defendant's conduct was a proximate cause of the victim's injury or death. Conduct, in this context, is taken to mean the driver's act of operating the vehicle not any particular way in which the driver operates the vehicle.

Appellant's App. at 191. Thus, under Rowe, the trial court correctly instructed the jury. This instruction, along with Final Instruction 5 listing the elements of the offense, adequately informed the jury of the law on causation. Land has not shown fundamental error in the trial court's jury instruction on causation.

### Issue Two: Implied Consent Instruction

Land also contends that the trial court committed fundamental error when it instructed the jury on implied consent. In particular, he argues that the implied consent instruction was confusing for the jury and "created a presumption of guilt and lessened the State's burden to prove each element beyond a reasonable doubt." Appellant's Brief at 13. Again, we cannot agree.

> The implied consent law provides:
>
> (a)  As used in this chapter, "portable breath test" means a hand held apparatus that measures the alcohol concentration in a breath sample delivered by a person into the mouthpiece of the apparatus.
>
> (b)  As used in this chapter, "fatal accident" means an accident, a collision, or other occurrence that involves at least one (1) vehicle and that results in:
>
>> (1)    death; or
>> (2)    bodily injury that gives a law enforcement officer reason to believe that the death of at least one (1) person is imminent.

9

Ind. Code is 9-30-7-1. Additionally,

> (a) A law enforcement officer shall offer a portable breath test or chemical test to any person who the officer has reason to believe operated a vehicle that was involved in a fatal accident or an accident involving serious bodily injury. If:
>
>> (1)     the results of a portable breath test indicate the presence of alcohol;
>>
>> (2)     the results of a portable breath test do not indicate the presence of alcohol but the law enforcement officer has probable cause to believe the person is under the influence of a controlled substance or another drug; or
>>
>> (3)     the person refuses to submit to a portable breath test;
>
> the law enforcement officer shall offer a chemical test to the person.
>
> (b)   A law enforcement officer may offer a person more than one (1) portable breath test or chemical test under this section. However, all chemical tests must be administered within three (3) hours after the fatal accident or the accident involving serious bodily injury.
>
> (c)   It is not necessary for a law enforcement officer to offer a portable breath test or chemical test to an unconscious person.

Ind. Code § 9-30-7-3. We have further explained:

> The implied consent statutes are aimed at providing law enforcement officers with implied consent for performing chemical tests on drivers who are either thought to be intoxicated or who have been involved in an accident involving a fatality or serious bodily injury. Brown v. State, 744 N.E.2d 989, 993 (Ind. Ct. App. 2001); see also Ind. Code §§ 9-30-6-2 (1998); 9-30-7-3 (1998) (subsequently amended by Pub. L. No. 275-2001, § 3). Chapter six of the implied consent statute, Ind. Code § 9-30-6, involves implied consent where the arresting officer has probable cause to believe that a person has operated a vehicle while intoxicated. I.C. § 9-30-6-2. Chapter seven of the implied consent statute, Ind. Code § 9-30-7, involves implied consent in accidents where the arresting officer has reason to believe that a person operated a vehicle that was involved in a fatal accident or an accident involving serious bodily injury. I.C. § 9-30-7-3. Under chapters six and seven of the implied consent statutes, a driver

10

impliedly consents to submit to a chemical test and faces penalties, such as suspension of a driver's license, if he refuses to submit to a test. Ind. Code §§ 9-30-6-1 (1998), 9-30-6-7 (1998), 9-30-7-2 (1998) (subsequently amended by Pub. L. No. 275-2001, § 2), 9-30-7-5 (1998) (subsequently amended by Pub. L. No. 275-2001, § 4).

Abney v. State, 811 N.E.2d 415, 419-20 (Ind. Ct. App. 2004) (footnote omitted).

Here, the trial court instructed the jury on implied consent as follows:

FINAL INSTUCTION NO. 17
A person who operates a vehicle impliedly consents to submit to a chemical test as a condition of operating a vehicle in Indiana.

FINAL INSTRUCTION NO. 18
A law enforcement officer shall offer a portable breath test or chemical test to any person who the officer has reason to believe operated a vehicle that was involved in a fatal accident or an accident involving serious bodily injury. If:

1.  the results of a portable breath test indicate the presence of alcohol;
2.  the results of a portable breath test do not indicate the presence of alcohol but the law enforcement officer has probable cause to believe the person is under the influence of a controlled substance or another drug; or
3.  the person refuses to submit to a portable breath test;

the law enforcement officer shall offer a chemical test to the person.

FINAL INSTRUCTION NO. 19
"Chemical test" means an analysis of a person's blood, breath, urine, or other bodily substance for the determination of the presence of alcohol, a controlled substance of [sic] its metabolite, or a drug or its metabolite.

FINAL INSTRUCTION NO. 20
A law enforcement officer may offer a person more than one chemical test. A person must submit to each chemical test offered by a law enforcement officer in order to comply with the implied consent law. However, all chemical tests must be administered within three (3) hours after the fatal accident or the accident involving serious bodily injury.

Appellant's App. at 191. Land contends that the jury could have understood from these instructions that the State was not required to prove beyond a reasonable doubt that Land caused the death of Guthrie, but merely that he was involved in the accident. He further contends that the State's burden was lowered to require only a showing that "breath, urine or other bodily substance is sufficient to prove guilt in this case" when, in fact, Indiana Code Section 9-30-5-5 requires the presence of a controlled substance or its metabolite in the blood. And he argues that these instructions create a presumption of the reliability of the blood test and that the number of implied consent instructions "gave the jury the impression that this was in important consideration in its deliberations, when in fact it was irrelevant to any element of the crime." Appellant's Brief at 17. We address each contention in turn.

Again, we must consider the jury instructions as a whole and in reference to each other. Stringer, 853 N.E.2d at 548. Considering the final instructions as a whole, the jury was instructed on implied consent and that it must find each of the elements of causing death while operating a motor vehicle with a Schedule I or II controlled substance, as a Class B felony. Thus, the implied consent instructions did not lessen the State's burden to prove any of the elements of the offense, including causation. Likewise, and for the reasons discussed in Issue One above, the implied consent instructions did not confuse the jury as to the proof necessary to show the existence of a Schedule I or II controlled substance or its metabolite in Land's blood to support a conviction for the offense at issue.

12

Additionally, the language of the implied consent instructions does not dictate a presumption regarding the burden of proof or the reliability of the test results. Rather, the instructions merely inform the jury on the implied consent law. And with regard to Land's contention that the number of instructions created the inappropriate impression that implied consent was to be an important consideration in deliberations, "when in fact it was irrelevant to any element of the crime," Appellant's Brief at 17, we conclude that any impression of the jury arising from the number of the instructions is mere speculation. Land has not shown that the trial court committed fundamental error in giving the implied consent instructions.

Affirmed.

BAILEY, J., and BARNES, J., concur.