**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

FILED
Feb 04 2013, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

MOHAMED SESAY,                         )
                                       )
    Appellant-Defendant,               )
                                       )
        vs.                          )   No. 49A02-1203-CR-190
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Plaintiff.                )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Becky Pierson-Treacy, Judge
The Honorable Shatrese M. Flowers, Commissioner
Cause No. 49F19-1109-CM-62975

**February 4, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Mohamed Sesay ("Sesay") was convicted after a jury trial of Public Intoxication, as a Class B misdemeanor,[1] and Disorderly Conduct, as a Class B misdemeanor.[2] He now appeals.

We affirm.

**Issues**

Sesay raises two issues for our review, which we restate as:

I.      Whether the trial court improperly denied his Batson challenge; and

II.     Whether the trial court erred in giving Jury Instruction 25.

**Facts and Procedural History**

At approximately 3:30 a.m. on September 3, 2011, Officer Daniel Slightom ("Officer Slightom") of the Indianapolis Metropolitan Police Department arrived at 3433 Woodfront, Apartment B, Indianapolis, in response to a complaint about a disturbance involving a man knocking on doors and windows, possibly with a firearm. Upon his arrival, Officer Slightom observed Sesay sitting in the driver's seat of a car parked partly on the handicapped ramp in front of the doorway to the apartment building. When Officer Slightom approached and asked for Sesay's name and information, he had difficulty understanding Sesay's slurred speech, and he observed Sesay fumble with his wallet. Officer Slightom smelled alcohol emanating from Sesay, and observed signs of intoxication, so he had Sesay exit the vehicle

---

[1] Ind. Code § 7.1-5-1-3 (2011). The section was modified, effective July 1, 2012. We refer to the version of the statute in force at the time of the alleged crime.

[2] I.C. § 35-45-1-3.

and handcuffed him. Officer Slightom, who by then had been joined by another police officer, placed Sesay under arrest for public intoxication. Sesay became belligerent, and continued talking, but Officer Slightom still could not understand him. Sesay began yelling at the officers, and continued to yell even after repeated requests for him to be quiet because of the early hour, eventually attracting attention from neighbors looking out of their windows.

On September 3, 2011, the State charged Sesay with Public Intoxication, as a Class B misdemeanor, and Disorderly Conduct, as a Class B misdemeanor. A jury trial was conducted on February 16, 2012.

During voir dire, the State asked the potential jurors if eyewitness testimony from one police officer would be enough to convict Sesay. Venireperson Benson, an African-American, responded: "Well, it[']s just like [venireperson Witka] says. He says we don't—I wasn't personally there. So you know, so anyone could be saying something to have everybody—us jurors on their side." (Tr. at 169-70.) When asked by Sesay during voir dire what kind of evidence would be necessary to convict him of public intoxication, Benson responded: "Anybody can say—like I said earlier, anybody can say anything. But if there's been no actual evidence (inaudible)." (Tr. at 184.) In response to the same question, venireperson Jackson, a Caucasian stated: "There would have to be sufficient evidence to really prove [the] person to be guilty[,] . . . [and] [b]lood alcohol would be one. You know if a person didn't do a blood alcohol [test], if they refuse and then how that transpired then." (Tr. at 184-85.)

3

The State exercised peremptory strikes to dismiss Benson and Long, the remaining two African-American venirepersons. Sesay challenged the State's dismissal of Benson and Long under Batson.[3] The State explained: "[Venireperson] Benson indicated that he would need more than testimony to convict. [Venireperson] Long indicated . . . that her compassion would not allow her to be fair." (Tr. at 204.) Sesay then responded that Benson, when asked if he'd give more credit to the testimony of either Officer Slightom or Sesay, said he would give "both of them a clean slate" and that Benson had not said he would give Sesay's testimony more credibility than that of Officer Slightom. (Tr. at 204-05.) The trial court denied Sesay's Batson challenge as to both Benson and Long.[4]

At the conclusion of the trial, the jury found Sesay guilty of all counts as charged, and the trial court entered judgments of conviction. The court sentenced Sesay to 180 days imprisonment for each count, with 160 days of each prison term suspended to probation, and ran the sentences concurrently for an aggregate sentence of 180 days imprisonment, with 160 days suspended to probation.

Sesay now appeals.

**Discussion and Decision**

Batson Challenge

Sesay contends the trial court erred when it permitted the State's use of peremptory strikes to remove from the jury venire the remaining two African-American venirepersons,

---

[3] See Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[4] Sesay does not develop argument regarding why a peremptory strike was improper as to Long, therefore we address only his argument regarding why a peremptory strike was improper as to Benson. See Ind. App. Rule 46A(8)(a).

4

Benson and Long.[5]

In prosecutions for offenses other than murder, the State may use as many as five peremptory strikes to exclude venirepersons from the jury. Ind. Code §§ 35-37-1-3(c) & 35-37-1-4. In general, a peremptory strike may be exercised for no cause whatsoever. Thompson v. State, 966 N.E.2d 112, 120 (Ind. Ct. App. 2012), trans. denied. However, peremptory strikes may not be used to exclude venirepersons from a jury solely on the basis of race. Id. (citing Batson, 476 U.S. at 79, 106 S. Ct. at 1712, 90 L. Ed. 2d at 69). We apply a three-step test to determine whether the State has improperly used a peremptory strike to remove a potential juror from the venire solely because of that individual's race:

> First, the party contesting the use of a peremptory [strike] must make a prima facie showing of discrimination based upon race against the member of the venire. Next, the party using a peremptory [strike] may present a race-neutral explanation for using the [strike]. If the party seeking to strike a member of the venire provides a race-neutral explanation, the trial court must then decide whether the challenger has carried its burden of proving purposeful discrimination.

Id. (internal quotation marks and citations omitted).

We afford broad latitude to the trial court's decision concerning Batson challenges because of the importance of the demeanor of potential jurors and the prosecutor in evaluating a race-neutral explanation for a peremptory strike. Id. Therefore we reverse only where the trial court's decision is clearly erroneous. Id. However, courts need not accept any facially neutral reason for striking a potential juror, and courts should consider all

---

[5] The State contends that Sesay's challenge on appeal of the State's removal of Benson and Long differs from the challenge he raised at trial, and that therefore Sesay's challenge should be reviewed under the more stringent fundamental error standard. However, Sesay's challenge before the trial court and his challenge now on appeal are sufficiently similar to allow review. See Grimes v. State, 633 N.E.2d 262, 264 (Ind. Ct. App. 1994).

relevant circumstances in assessing <u>Batson</u>-challenged peremptory strikes. <u>Killebrew v. State</u>, 925 N.E.2d 399, 401 (Ind. Ct. App. 2010), <u>trans. denied</u>. If a prosecutor's proffered reason for striking an African-American prospective juror applies just as well to an otherwise-similar non-African-American who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at the third step of a <u>Batson</u> inquiry. <u>Addison v. State</u>, 962 N.E.2d 1202, 1210 (Ind. 2012). Even a single instance of discrimination because of a venireperson's race is a ground for reversal where a trial court erroneously rejects a <u>Batson</u> challenge. <u>Thompson</u>, 966 N.E.2d at 120.

The burden is low at the first stage of a <u>Batson</u> inquiry. <u>Addison</u>, 962 N.E.2d at 1208. The defendant need only show circumstances raising an inference that discrimination occurred. <u>Id.</u> While the removal of some African-American venirepersons by use of peremptory strikes does not, by itself, raise an inference of racial discrimination, "the removal of the only African[-]American juror [who] could have served on the petit jury does raise an inference that the juror was excluded on the basis of race." <u>Id.</u> at 1208-09 (internal quotation marks and citations omitted).

Here, the only two remaining African-American venirepersons were stricken peremptorily by the State. This established a prima facie showing of discrimination based upon race. <u>See</u> <u>Thompson</u>, 966 N.E.2d at 120; <u>Addison</u>, 962 N.E.2d at 1208.

If the first stage showing has been satisfied, the burden at the second stage shifts to the prosecution, which must offer a race-neutral basis for striking the potential juror in question. <u>Addison</u>, 962 N.E.2d at 1209 (internal quotation marks omitted). Unless a discriminatory

6

intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. Id. Although the race-neutral reason must be more than a mere denial of improper motive, the reason need not be particularly persuasive, or even plausible. Id.

Here, the State explained that it exercised its peremptory strikes of Benson and Long because Benson indicated that he would need more than mere testimony to convict Sesay, and Long indicated that her compassion would not allow her to be fair. The State thus carried its burden of offering a race-neutral reason for striking venirepersons Benson and Long. See Addison, 962 N.E.2d at 1209.

At the third and last stage of a Batson inquiry, the trial court must determine whether the defendant has shown purposeful discrimination in light of the parties' submissions. Id. at 1209-10. Although the party opposing the strike bears the burden of persuasion in a Batson challenge, the third step is the duty of the trial judge, and the trial court must evaluate the persuasiveness of the State's justification. Id. at 1210. The issue is essentially whether the trial court finds the prosecutor's race-neutral explanation credible. Id.

Here, in response to the State's explanation, Sesay stated that Benson, when asked if he'd give more credit to the testimony of either Officer Slightom or Sesay, said he would give "both of them a clean slate" and that Benson had not said he would give Sesay's testimony more credibility than that of Officer Slightom. (Tr. at 204-05.) The trial court then denied Sesay's Batson challenge, effectively finding the State's explanation more persuasive than Sesay's. See Addison, 962 N.E.2d at 1210.

Sesay argues that the State's proffered reason for striking Benson applied just as well

7

to Jackson, an otherwise-similar non-African-American venireperson who was permitted to serve, thus tending to prove purposeful discrimination. See id. However, the statements of Benson and Jackson differ. Benson's statement implied that testimony alone was not "actual evidence," and that he would need more than mere testimony to convict Sesay of public intoxication. (Tr. at 184.) In contrast, while Jackson implied that for him physical evidence would be sufficient to prove a person guilty of public intoxication, he did not suggest that witness testimony alone would be insufficient for him to convict.

In view of the differences between the statements of Benson and Jackson, and in deference to the trial court's ability to discern the demeanor of potential jurors and the prosecutor in evaluating a race-neutral explanation for a peremptory strike, we cannot conclude that the trial court erred when it permitted the State to use peremptory strikes to remove Benson and Long from the venire.

Jury Instruction 25

Sesay next contends that the trial court abused its discretion by giving Final Instruction 25. The instruction, which Sesay also challenged at trial, provides:

> With respect to the sufficiency of the evidence upon the element of intoxication, for purposes of the offense of public intoxication, non-expert witnesses may offer opinions about intoxication, and the defendant's conviction may be sustained upon sole [sic] the testimony of the arresting officer.

(App. at 78.)

"The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001) (internal

8

quotation marks omitted). In reviewing a trial court's decision to give or refuse tendered jury instructions, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions. Springer v. State, 798 N.E.2d 431, 433 (Ind. 2003). Jury instruction is a matter assigned to trial court discretion, and an abuse of that discretion occurs when instructions, taken as a whole, mislead the jury as to the applicable law. Ham v. State, 826 N.E.2d 640, 641 (Ind. 2005). However, before a defendant is entitled to a reversal, he must affirmatively show that the erroneous jury instruction prejudiced his substantial rights. See Ind. Trial Rule 61; Snell v. State, 866 N.E.2d 392, 396 (Ind. Ct. App. 2007).

In Ludy v. State, the Indiana Supreme Court held that the trial court erred in instructing the jury that "[a] conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt." 784 N.E.2d 459, 460 (Ind. 2003). In particular, the challenged instruction was erroneous because it: (1) unfairly highlighted a single witness's testimony; (2) presented an appellate standard of review irrelevant to a jury's function as fact-finder; and (3) possibly confused the jury by using the technical term "uncorroborated." Id. at 461. Sesay contends that Final Instruction 25 was misleading, and thus an abuse of discretion under Ludy because it: (1) unfairly highlighted a single witness's testimony; and (2) presented an appellate standard of review irrelevant to a jury's function as fact-finder. See id.

9

The courts of this State have long disapproved instructions that unduly "emphasize one particular evidentiary fact, witness, or phase of the case." Ham, 826 N.E.2d at 641-42; see, e.g., Ludy, 784 N.E.2d at 459 ("[t]o expressly direct a jury that it may find guilt based on the uncorroborated testimony of a single person is to invite it to violate its obligation to consider all the evidence[]"); Dill, 741 N.E.2d at 1232-33 ("although evidence of flight may, under appropriate circumstances, be relevant, admissible, and a proper subject for counsel's closing argument, it does not follow that a trial court should give a discrete instruction highlighting such evidence[]").

Here, Final Instruction 25 states that "the defendant's conviction may be sustained upon sole [sic] the testimony of the arresting officer." (App. at 78.) This language is problematic because it focuses the jury's attention on and highlights the testimony of Officer Slightom, inviting the jury to ignore its obligation to "consider all the evidence presented at trial." Ludy, 784 N.E.2d at 461 (emphasis in original).

While there is no blanket prohibition against the use of appellate decision language in jury instructions, the preferred practice is to use the pattern jury instructions. Gravens v. State, 836 N.E.2d 490, 494 (Ind. Ct. App. 2005), trans. denied. This is true especially because the mere fact that certain language or expressions are used in the opinions of Indiana's appellate courts does not make such language proper for instructions to a jury. Id. Appellate language "may be confusing or misleading to the [jury] panel members[,] and . . . may be irrelevant to the jury's duties as fact-finder." Bayes v. State, 791 N.E.2d 263, 265 (Ind. Ct. App. 2003), trans. denied.

Here, the language of Final Instruction 25 closely follows the language of <u>Wright v. State</u>, in which we addressed a sufficiency of the evidence claim. 772 N.E.2d 449, 460 (Ind. Ct. App. 2002) ("[w]ith respect to the sufficiency of the evidence upon the element of intoxication, it is established that a non-expert witness may offer an opinion upon intoxication, and a conviction may be sustained upon the sole testimony of the arresting officer[]"). In essence, the trial court "informed the jury that if it convicted [Sesay] . . . based only on the testimony of . . . [Officer Slightom], that conviction would likely be upheld on appeal." <u>Gravens</u>, 836 N.E.2d at 496. This presentation of an appellate standard of review was irrelevant to the jury's role as fact-finder, and thus was error.

Having concluded that the trial court erred in giving Final Instruction 25, we must determine whether the instruction prejudiced Sesay's substantial rights. <u>See</u> <u>Snell</u>, 866 N.E.2d at 396. Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the instruction would not likely have impacted the jury's verdict. <u>Randolph v. State</u>, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004), <u>trans. denied</u>.

Here, Sesay's convictions are clearly sustained by the evidence. Officer Slightom testified that when he first encountered Sesay, he smelled alcohol emanating from Sesay and observed signs of intoxication, such as slurred speech and Sesay fumbling for his wallet when asked for it. The evidence is sufficient to sustain Sesay's conviction for Public Intoxication, as a Class B misdemeanor. <u>See</u> I.C. § 7.1-5-1-3 (2011); <u>Wright</u>, 772 N.E.2d at 460 ("[w]ith respect to the sufficiency of the evidence upon the element of intoxication, it is

established that a non-expert witness may offer an opinion upon intoxication, and a conviction may be sustained upon the sole testimony of the arresting officer[]").

Additionally, Officer Slightom testified that Sesay eventually became belligerent and yelled, even after repeated requests for him to be quiet because of the early hour, to the point where he attracted the attention of neighbors looking out of their windows. The evidence is thus also sufficient to sustain Sesay's conviction for Disorderly Conduct, as a Class B Misdemeanor. See I.C. § 35-45-1-3; Blackman v. State, 868 N.E.2d 579, 584 (Ind. Ct. App. 2007) ("[t]o support a conviction for disorderly conduct, the State must prove that a defendant produced decibels of sound that were too loud for the circumstances[]"), trans. denied.

Furthermore, it is unlikely the instruction impacted the jury's verdict. Both Preliminary Instruction 16—incorporated in the final instructions—and Final instruction 26 advised the jury that they were the exclusive judges of the evidence, that they were the judges of the credibility of the witnesses and the weight to be given to their testimony, and that they should not disregard the testimony of any witness without due consideration and without just cause, but that they were to decide who to believe and who to disbelieve. (App. at 60, 79.)

The giving of Final Instruction 25 was erroneous because, although a correct statement of an appellate standard of review, the instruction did not assist the jury in its fact-finding role. However, Sesay's convictions were clearly supported by the evidence, and it is unlikely the instruction impacted the jury's verdict. Therefore, the giving of Final Instruction 25 was harmless error.

## Conclusion

The trial court did not err when it permitted the State to use peremptory strikes to remove Benson and Long from the venire. The giving of Final Instruction 25 was harmless error.

Affirmed.

VAIDIK, J., and BROWN, J., concur.