Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 02 2013, 6:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIRK S. FREEMAN**
Law Office of Kirk Freeman
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREMY BENNER, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1211-CR-913 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Michael B. Troemel, Judge Pro Tempore
Cause No. 79C01-1109-FC-25

**August 2, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Jeremy Benner appeals his conviction and the sentence imposed for child molesting, as a Class C felony, following a jury trial. Benner presents the following issues for review:

1.    Whether the trial court erred by omitting a mens rea element when instructing the jury on child molesting.

2.    Whether the trial court abused its discretion when it denied Benner's motions for a mistrial.

3.    Whether the trial court abused its discretion when it excluded evidence regarding the victim's prior sexual conduct.

4.    Whether the trial court abused its discretion when it sentenced Benner based on the identification of aggravators and mitigators.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In February 2011, thirty-eight-year-old Benner was living with his fiancée ("Mother") and her then twelve-year-old daughter, A.M., and Mother's minor son Z.M. Benner and A.M. engaged in "horseplay" such as pinching each other's nipples, Benner hitting A.M. on the bottom, Benner wearing sweatpants without underwear, and Benner kissing A.M. on the mouth. Transcript at 24. Benner also talked to A.M. about his sex life with her mother and about the size of his genitalia.

One evening in February or March, A.M., her friend, A.M.'s brother Z.M., and his friend were drinking alcohol purchased by Benner. A.M. and her friend then went to A.M.'s bedroom. Sometime after midnight, A.M. heard her mother's bedroom door open. A.M. had been sick earlier from drinking and still felt unwell, so she left her room

to look for Mother. Instead she found Benner in the kitchen, and the two began talking. She told Benner that she had a stomach ache, and he rubbed her stomach on the outside and then under her shirt. Next Benner put his hand inside her waistband and into her underwear, inserted his finger in her vagina, and "started moving it around." Transcript at 38. A.M. felt "disgusted" and she left the kitchen and went to her room. Id. There she told her friend what had happened.

Later, one of A.M.'s friends told a sibling what Benner had done to A.M. The sibling then told an adult, who in turn related the incident to A.M.'s father ("Father"), a police officer. Father then reported the incident to Child Protective Services ("CPS").

On March 29, Benner voluntarily appeared for an interview with law enforcement and voluntarily waived his Miranda rights. Benner initially denied that anything had happened between him and A.M., but later he admitted that his hand had been in her vaginal area. After the interview, Benner also admitted to Mother that he had put his hand down A.M.'s pants but "just until he felt [pubic] hair and then he quit." Transcript at 63.

On September 16, 2011, the State charged Benner with child molesting, as a Class C felony, and public indecency, as a Class A misdemeanor. On Benner's motion, the trial court severed the charges. On September 4, 2012, the State filed a motion in limine seeking, in part, the exclusion of evidence regarding A.M.'s prior sexual conduct, and on September 6 Benner filed a response to that motion. On the same day, less than ten days before trial, Benner also filed a motion of intent to use evidence of alleged sexual conduct at the time of the alleged child molesting incident. Following a hearing on the motion in

3

limine, the trial court granted the State's motion in part, excluding evidence of A.M.'s prior sexual conduct.

A jury trial on the child molesting charge was held September 12 and 13. Twice during trial Benner moved for a mistrial, but the trial court denied those motions. Following deliberations, the jury found Benner guilty as charged. The trial court entered judgment of conviction accordingly. At sentencing, the court identified aggravators and mitigators, found that the aggravators outweighed the mitigators, and sentenced Benner to six years in the Department of Correction. Benner now appeals his conviction and his sentence.

## DISCUSSION AND DECISION

### Issue One: Jury Instructions

The trial court has broad discretion in the manner of instructing the jury, and we will review its decision only for an abuse of that discretion. Snell v. State, 866 N.E.2d 392, 395 (Ind. Ct. App. 2007). Jury instructions are to be considered as a whole and in reference to each other. Stringer v. State, 853 N.E.2d 543, 548 (Ind. Ct. App. 2006). The trial court's ruling will not be reversed unless the instructions, when taken as a whole, misstate the law or mislead the jury. Kelly v. State, 813 N.E.2d 1179, 1185 (Ind. Ct. App. 2004), trans. denied. Additionally, before we will reverse, the defendant must establish that the erroneous instruction prejudiced his or her substantial rights. Stringer, 853 N.E.2d at 548.

When reviewing a challenge to a jury instruction, we will consider whether the instruction correctly states the law, whether there was evidence in the record to support

4

the giving of the instruction, and whether the substance of the instruction is covered by other instructions given by the trial court. <u>Hubbard v. State</u>, 742 N.E.2d 919, 921 (Ind. 2001), <u>trans. denied</u>. The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable the jury to comprehend the case clearly and arrive at a just, fair, and correct verdict. <u>Snell</u>, 866 N.E.2d at 396. Each party to an action is entitled to have the jury instructed on that party's particular theory of complaint or defense. <u>Id.</u>

Benner contends that the trial court erred when it instructed the jury on child molesting, as a Class C felony.[1] Specifically, he argues that the trial court erred when it omitted any mention of the "mens rea intent of 'knowingly or intentionally'" in Final Instruction Number 6, which lists the elements of the offense.[2] Appellant's Brief at 10. He further contends that omission of the mens rea element from the instruction is reversible error, citing in support <u>Clark v. State</u>, 728 N.E.2d 880 (Ind. Ct. App. 2000),

---

[1] Benner has included in his appendix multiple copies of what purport to be the final jury instructions in this case. The transcript does not include the final instructions, none of the copies is signed by the trial court, and some sets are identical to each other. A citation to the appendix in his brief indicates that the final instructions starting at page 40 of the Appendix are likely Benner's proposed instructions. Based on his argument on appeal, the appellee's brief, and Benner's reply brief, we treat the identical sets of instructions starting at pages 50 and 57 in the appendix as the final instructions given in this case. But we remind counsel to provide a clear record in the future to avoid possible waiver of an issue and to avoid unnecessarily complicating the court's review.

[2] Benner also failed to set out in his brief the final jury instruction at issue and his objections made at trial to the same, in violation of Appellate Rule 46(A)(8)(e) ("When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto."). Additionally, Benner did not accurately cite to the record to show the nature of his objection to Final Instruction Number 6. We address the issue on the merits, but, to avoid waiver in the future, we remind counsel to comply with this rule and provide correct citations to the record.

overruled by, <u>D'Paffo v. State</u>, 778 N.E.2d 798, 803 (Ind. 2002),[3] and <u>Jarrett v. State</u>, 580

N.E.2d 245 (Ind. Ct. App. 1991), <u>trans. denied</u>.  We cannot agree.

Indiana Code Section 35-42-4-3 defines the offense of child molesting in relevant

part as follows:

> (a)  A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony.  However, the offense is a Class A felony if:
>
>> (1)  it is committed by a person at least twenty-one (21) years of age . . . .
>
> (b)  A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony. . . .

Although there is no specific mention of any criminal intent or mens rea in the relevant

portion of the child molesting statute, mens rea is an element of the crime of child

molesting.  <u>Cardwell v. State</u>, 516 N.E.2d 1083, 1086 (Ind. Ct. App. 1987).

Benner is correct that, generally, the omission of a mens rea element from a jury

instruction may constitute reversible error.  However, such is not always the case.  Again,

jury instructions must be read as a whole and in reference to each other.  <u>Stringer</u>, 853

N.E.2d at 548.  Thus, the question is whether the instructions, when read together as a

whole, informed the jury that Benner's conduct must have been knowing or intentional in

order for him to be guilty of child molesting.

We considered this issue in <u>Jarrett</u> and <u>Cardwell</u>.  In <u>Jarrett</u>, the defendant sought

post-conviction relief, arguing that his trial counsel was ineffective for failing to object to

---

[3]  Benner did not include in his brief the subsequent history of <u>Clark</u>, showing that it has been overruled by <u>D'Paffo</u>.  <u>See</u> Bluebook Rule 10.7.

6

the lack of mens rea in the jury instruction on the elements of child molesting. While the trial court had not included a mens rea element in the instruction listing the elements of child molesting, the court had also given the following instructions: that the State had the burden to prove the defendant was "guilty of each element of the crime charged, beyond a reasonable doubt"; that a "person who, with a child under twelve (12) years of age, performs or submits to deviate sexual conduct commits child molesting, a Class B felony" under Indiana Code Section 35-42-4-3(a); that "deviate sexual conduct" means "an act of sexual gratification involving a sex organ of one person and the mouth or anus of another person"; and that a person who, with a child under twelve (12) years of age, performs or submits to any fondling or touching, of either the child or the older person, with the intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony" under Indiana Code Section 35-42-4-3. 580 N.E.2d at 252.

The court held that the language of these instructions "'utilized words referring to deliberate injury conduct, words which in their plain meaning would be understood by the jury as including criminal knowledge or intent.'" Id. (quoting Snider v. State, 468 N.E.2d 1037, 1039 (Ind. 1984)). Thus, "[b]ecause the jury instructions, as a whole, placed the mens rea element before the jury, Jarrett's trial counsel was not ineffective for failing to object to the final instructions or for failing to tender his own instructions." Id. at 253; see also Cardwell, 516 N.E.2d at 1087 (no reversible error where child molesting instruction did not refer to mens rea but reading instructions as a whole showed that the issue of mens rea was put before the jury).

7

Here, Final Instruction Number 6 tracks the language of Indiana Code Section 35-42-4-3(b). Again, the jury was instructed that the elements of the offense charged were: (1) Benner; (2) performed or submitted to any fondling or touching of or by A.M.; (3) with the intent to arouse or satisfy the sexual desires of A.M. or Benner; (4) when A.M. was a child under fourteen years of age. The jury was also instructed that the State had to prove each of these elements beyond a reasonable doubt and that, to constitute a crime, "criminal intent must be united with an overt act, and they must occur at the same time." Appellant's App. at 53, 60. Additionally, although the offense has a general mens rea of intentional or knowing conduct, it also contains a second intent element, namely, a showing that the conduct was done with the intent to arouse or satisfy the sexual desires of A.M. or Benner.

Moreover, Benner did not challenge at trial whether his conduct was intentional or knowing. Instead, he argued that he never touched A.M.'s sex organ. In light of Benner's argument at trial, and reading the instructions together, as we must, we conclude that the issue of mens rea was before the jury. Benner has not shown that the trial court committed reversible error when it instructed the jury on child molesting under Indiana Code Section 35-42-4-3(b).

**Issue Two: Motions for Mistrial**

Whether to grant or deny a motion for a mistrial is a decision left to the sound discretion of the trial court. Alvies v. State, 795 N.E.2d 493, 506 (Ind. Ct. App. 2003), trans. denied. We will reverse the trial court's ruling only upon an abuse of that discretion. Id. We afford the trial court such deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. Id. To prevail on appeal from the denial of a motion for a mistrial, the appellant must demonstrate that the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. Id. We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. Id.

A mistrial is an extreme sanction warranted only when no other cure can be expected to rectify the situation. Id. Reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings because a timely and accurate admonition to the jury is presumed to sufficiently protect a defendant's rights and remove any error created by the objectionable statement. Id.

Benner contends that the trial court should have granted his motions for mistrial. Benner moved for mistrial based on the testimony of two different witnesses. We address each motion in turn.

In regard to the first motion, Benner objected to A.M.'s testimony describing a "certain sex act, anal sex, between [Benner] and her mother and [Benner's] anatomy."

9

Appellant's Brief at 11. Benner objected to the testimony, and the trial court granted his motion to strike it and admonished the jury to disregard that testimony.[4] Benner then made a motion for a mistrial, which the trial court denied.

On appeal, Benner argues that the trial court could not "unring the bell" of A.M.'s testimony. Id. But he makes no additional argument or further analysis of the issue. Again, a timely and accurate admonition to the jury is presumed to sufficiently protect a defendant's rights and remove any error created by the objectionable statement. Alvies, 795 N.E.2d at 506. Benner makes no argument that the admonishment was untimely, inaccurate, or in any other way inadequate. As such, Benner has not shown that the trial court abused its discretion when it denied his motion for a mistrial based on A.M.'s testimony.

Benner also requested a mistrial based on the testimony of Detective Stephen Buckley of the Indiana State Police. Detective Buckley testified that, while he was interviewing Benner,

> I started out by giving just kind of limited information regarding the investigation to see what kind of response that I would get not to lead in any way. There was a broad denial at the very beginning which is fairly typical in these investigations. As we continue[d] to talk I noticed the denials were fairly weak and inconsistent. Many of the answers that I got [to] some of my specific target questions showed deception.

Trial Transcript at 127. Benner objected to the testimony regarding deception as invading the province of the jury. The trial court granted his motion to strike and

---

[4] Benner does not show that he made a motion for a mistrial based on A.M.'s testimony. We remind defense counsel that the failure to support an argument with citations to the record can result in waiver. App. R. 46(A)(8)(a). Because the State provided citations to the record to show Benner's motion for a mistrial, we consider the issue on the merits.

10

admonished the jury to disregard that testimony. Benner subsequently moved for a mistrial.

On appeal, Benner contends that the detective's testimony violated Indiana Evidence Rule 704(b). That rule provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Ind. Evidence Rule 704(b). In support of his contention he also cites Bradford v. State, 960 N.E.2d 871 (Ind. Ct. App. 2012). There, a Child Protective Services caseworker testified that she and the department had determined sexual abuse allegations to be substantiated. We held that such testimony "constituted an opinion regarding the truth of the allegations, thereby violating Indiana Evidence Rule 704(b)" and, therefore, was not a harmless error. Id. at 876.

Here, Detective Buckley's testimony violated Rule 704(b), and the trial court admonished the jury to disregard his testimony. But Benner has not shown that that testimony nevertheless placed him in grave peril. Indeed, a timely and accurate admonishment is presumed to cure any error in the admission of evidence. Lay v. State, 659 N.E.2d 1005, 1009 (Ind. 1995). "[R]eversible error is seldom found when the trial court has admonished the jury to disregard a statement made during proceedings." Warren v. State, 767 N.E.2d 995, 999 (Ind. 2001) (internal quotation marks and citation omitted). Benner has not shown that persuasive effect of the detective's testimony, which the trial court struck and admonished the jury to disregard, had such an effect on the jury so as to place Benner in grave peril. Alvies v. State, 795 N.E.2d at 506. Benner

11

has not shown that the trial court abused its discretion when it denied his motion for a mistrial as a result of Detective Buckley's testimony.

## Issue Three:  Exclusion of Evidence

Our standard of review of a trial court's admission or exclusion of evidence is an abuse of discretion.  Speybroeck v. State, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007).  A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court.  Id.  In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendants' favor.  Dawson v. State, 786 N.E.2d 742, 745 (Ind. Ct. App. 2003), trans. denied.

> And not all error is reversible error.  As our supreme court has explained:
>
> [E]rrors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party.  Likewise, reversible error cannot be predicated upon the erroneous admission of evidence that is merely cumulative of other evidence that has already been properly admitted.  To determine whether the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence upon the jury.

Sibbing v. Cave, 922 N.E.2d 594, 598 (Ind. 2010) (quotations and citations omitted).

Here, Benner contends that the trial court abused its discretion when it excluded evidence of A.M.'s prior sexual conduct under Indiana Evidence Rule 412 and Indiana Code Section 35-37-4-4, the Rape Shield Statute.  Indiana Rule of Evidence 412 provides:

> (a)  In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:

12

(1)   evidence of the victim's or of a witness's past sexual conduct with the defendant; [or]

(2)   evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded . . . .

(b)   If a party proposes to offer evidence under this rule, the following procedure must be followed:

(1)   A written motion must be filed at least ten days before trial describing the evidence.  For good cause, a party may file such motion less than ten days before trial.

(2)   The court shall conduct a hearing and issue an order stating what evidence may be introduced and the nature of the questions to be permitted.

(c)   If the state acknowledges that the victim's pregnancy is not due to the conduct of the defendant, the court may instruct the jury accordingly, in which case other evidence concerning the pregnancy may not be admitted.

And the Rape Shield Statute provides, in relevant part:

(a)   In a prosecution for a sex crime as defined in IC 35-42-4:

(1)   Evidence of the victim's past sexual conduct . . .

may not be admitted, nor may reference be made to this evidence in the presence of the jury, except as provided in this chapter. . . .

(c)   If the defendant or the state proposes to offer evidence described in subsection (b) of this section, the following procedure must be followed:

(1)   The defendant or the state shall file a written motion not less than ten (10) days before trial stating that it has an offer of proof concerning evidence described in subsection (b) and its relevancy to the case.  This motion shall be accompanied by an affidavit in which the offer of proof is stated.

(2)   If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, and at the hearing allow the questioning of the victim or witness

13

> regarding the offer of proof made by the defendant or the
> state.

> At the conclusion of the hearing, if the court finds that evidence proposed
> to be offered by the defendant or the state regarding the sexual conduct of
> the victim or witness is admissible under subsection (b) of this section, the
> court shall make an order stating what evidence may be introduced by the
> defendant or the state and the nature of the questions to be permitted.  The
> defendant or the state may then offer evidence under the order of the
> court. . . .

Ind. Code § 35-37-4-4.  The purpose of the Rape Shield Law is to encourage the

reporting of sexual assaults and to prevent victims from feeling as though they are on trial

for their sexual histories.  McVey v. State, 863 N.E.2d 434, 443 (Ind. Ct. App. 2007),

trans. denied.  This court will not engraft additional exceptions to the rape shield

prohibition against inquiry into the past sexual activities of a victim.  Little v. State, 650

N.E.2d 343, 345 (Ind. Ct. App. 1995).

Here, Benner contends that the trial court abused its discretion when it excluded

evidence showing that Benner had found A.M. had been engaged in sexual conduct with

another minor in the hours before the alleged incident for which Benner was charged.  He

argues that he should have been permitted to offer that evidence in order to show that

A.M. was biased, prejudiced against him, or had an ulterior motive in making the

allegation against him.  In essence, Benner seeks to add an exception to the Rape Shield

Statute.  We cannot do so.  See id.

Still, Benner cites Zawicki v. State, 753 N.E.2d 100, 103 (Ind. Ct. App. 2001),

trans. denied, where we held that the trial court should have admitted into evidence letters

the victim had allegedly written regarding her amorous feelings for the defendant's

daughter.  But that case is inapposite because the evidence at issue was not sexual

14

conduct. Zawicki does not create an additional exception to the Rape Shield Statute and, therefore, does not support Benner's contention.

Benner also argues that a balancing test should be employed to determine whether excluding the prior sexual conduct evidence violates his right to cross-examine a witness for bias or motive. His entire analysis follows: "In applying this balancing test [Benner] sought to use the sexual conduct to impeach A.M. whose sexual conduct was related in time (that evening) and an ulterior motive [sic]. As such, the Court should reverse the conviction and remand for retrial." Appellant's brief at 13-14. Benner's conclusory statement is not supported by cogent reasoning. As such, that argument is waived. See Ind. Appellate Rule 46(A)(8)(a). Benner has not demonstrated that the trial court abused its discretion when it excluded evidence of A.M.'s prior sexual conduct.

### Issue Four: Aggravators and Mitigators

Finally, Benner contends that the trial court abused its discretion when it sentenced him. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).

> So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion. As we have previously observed, "[i]n order to carry out our function of reviewing the trial court's exercise of discretion in sentencing, we must be told of [its] reasons for imposing the sentence . . . . This necessarily requires a statement of facts, in some detail, which are peculiar to the particular defendant and the crime, as opposed to general impressions or conclusions. Of course such facts must have support in the record." Page v. State, 424 N.E.2d 1021, 1023 (Ind. 1981). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." K.S. v. State, 849 N.E.2d

15

538, 544 (Ind. 2006) (quoting In re L.J.M., 473 N.E.2d 637, 640 (Ind. Ct. App. 1985)).

One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence— including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

Id. at 490-91.

Here, Benner challenges an aggravator and a mitigator found by the trial court. In the sentencing order, the trial court found as follows:

The Court finds as aggravating factors the impact to [sic] the victim, the defendant's previous inappropriate conduct with the victim, the substantial history of criminal acts by the defendant, and that it is likely that the defendant will commit similar crimes, [and that] the defendant was in a position of trust.

The Court finds as mitigating factors no criminal history and the defendant's military service.

The Court further finds that the aggravating factors outweigh the mitigating factors.

IT IS ORDERED AND ADJUDGED that the defendant, Jeremy Benner, be, and he hereby is, sentenced to the Indiana Department of Correction for a period of six (6) years for the crime of Child Molesting, as charged in Count I, a Class C felony.

16

Appellant's App. at 9-10.  Benner contends "[o]ne cannot have no prior criminal history and have a substantial history of criminal acts.  The two are incongruous and thus render the sentence inappropriate."[5]  Appellant's Brief at 14-15.

The "substantial history of criminal acts" by Benner is apparently based on letters written to the court for sentencing.  But Benner has not included those letters in the record for review.  To the extent the record is inadequate for review, Benner has waived the issue.  Williams v. State, 690 N.E.2d 162, 176 (Ind. Ct. App. 1997).  Waiver notwithstanding, we conclude with confidence that the trial court "would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Anglemyer, 868 N.E.2d at 490-91.

Benner does not challenge the aggravators of the impact on the victim, his previous inappropriate conduct with the victim, the likelihood that he would commit similar offenses, and that he was in a position of trust with the victim.  And again, the trial court found the following mitigators:  Benner's lack of criminal history and his military service, giving Benner almost day-for-day credit to the sentence for his military service.  But in weighing the aggravators and mitigators, the trial court stated:

> [T]he court has [sic] finds a lot of aggravating circumstances and I find that the aggravators greatly outweigh the mitigators.  And the first one is and I think that there wasn't enough said about it at the hearing is that the damage is done to the victim here.  She is living in a household of apparent chaos where there is drinking and there is all of this inappropriate things [sic] going on and then you do this and I think you contributed to it.  And it's no—it's not just her it's just any little girl who is abused in this fashion.  It has a profound effect on her for the rest of her life and I don't think you

---

[5]  Benner appears to confuse the abuse of discretion standard here with a claim that the sentence is inappropriate under Appellate Rule 7(B).  Our review is limited to whether the trial court abused its discretion as outlined in Anglemyer.  Benner does not cite Appellate Rule 7(B) or make a cogent argument for review under that rule.

saw that. I mean I really don't [sic] you saw that. But I am not going to ignore that fact and I find that it's a substantial aggravator that she's going to have mental problems for a long period of time because of your actions. I find that there is another mitigator that why [sic] you did not provide the alcohol you clearly (inaudible) the drinking that was going on in the home that night. I am going to find as another aggravator your previous inappropriate conduct with the victim. The notion that you were by your own admission pi[n]ching her nipples, going about the house shirtless, wearing sweats without underwear and kissing her on the mouth. All of these things given in isolated time wouldn't distress the court so much but this was just bound to happen based on your conduct. And here again you're the adult and she's the kid. You're [sic] counsel will undoubtedly appeal this aggravator but I am going to find that you have a substantial history of criminal acts of voyeurism, battery and sexual misconduct of minors and I will not your object [sic] up front based on the arguments you made Mr. Freeman [defense counsel] which were well made.

* * *

And then I understand that it will certainly be an issue for appeal. However the court is going to find that that evidence even though it came in by letters is reliable. Mr. Benner I, as a defense lawyer, generally recognize the disparate power between a defendant and the state and the powers that the police have and the investigators that they have and the ability and the time and all of the resources that they have but I am not convinced in the least that the prosecutor's office got about ten people who are unrelated to the victim to conspire to make up allegations about you. And therefore I find that those letters are reliable. There's been much said about your lack of remorse[.] I am not going to find a mitigator or an aggravator about [sic] that. There is no tax in this court for going to trial and the court understands why—while you have the right to appeal that you would not make or present evidence of remorse. Your letter of apology was under whelming [sic] at best. The Court finds as a fifth aggravator that this is a situation where it is likely that you will commit similar crimes[. A]s a sixth aggravator the court finds that you were in the position of trust. You testified that you never told her mother about her daughter's attempt to kiss you intimately. You acquiesce in the drinking. You were in a position of trust. The reason that the court released you on the day of your guilty verdict was basically on the arguments of your counsel. You[r] counsel was in here (inaudible) making this objection and that objection and doing the best he could with what he had to work with and for that reason and for the court's hope that you might have come in here having been enrolled in a SAFTIP program or something like that you might have done that but you didn't. For me I don't take any delight in sending someone to prison but

18

you had the opportunity to persuade me otherwise. You had the opportunity to be involved in something that you could say this is not going to happen and the court has no confidence that this would not happen again. It seems to me Mr. Benner that you have been doing these kinds of things and people have been protecting you for a long time because you are personable and you're good looking and you're fun at first glance but I think what happened here is that the jury just said no your conduct is not tolerable. So those are the aggravators and the mitigators.

Sentencing Transcript at 53-56.

The trial court made much of the damage suffered by Benner's victim, identifying that as a "substantial aggravator." Id. at 54. Thus, we consider that "substantial aggravator," along with Benner's admitted prior misconduct with the victim, the fact that he was in a position of trust, and the likelihood that he would commit similar crimes in the future as aggravators, and we consider his military service and lack of criminal history as mitigators. We can say with confidence that the trial court would have imposed the same sentence had it properly considered only these reasons. See Anglemyer, 868 N.E. at 490-91.

Benner also contends that he received "nearly" a maximum sentence, but for the credit given for his military service. Appellant's Brief at 15. He then argues that the maximum sentence is reserved for the worst offenders, which he is not. But Benner did not receive the maximum sentence. Rather, the trial court imposed a sentence two years below the maximum. As such, Benner's argument is without merit. Benner has not shown that the trial court abused its discretion when it sentenced him.

**Conclusion**

In sum, the trial court did not err when it instructed the jury because the final instructions, when read as a whole, adequately put the issue of mens rea before the jury

19

and because at trial Benner did not contest his mens rea regarding the intent to arouse. Benner also has not shown that the trial court abused its discretion when it denied his motions for mistrial based on the testimony of A.M. and Detective Buckley. Nor has Benner shown that the trial court should have admitted at trial evidence regarding A.M.'s prior sexual conduct, because the conduct at issue did not fall under any of the exceptions to the Rape Shield Law. Finally, Benner has not shown that the trial court abused its discretion when it sentenced him based on its identification of aggravators and mitigators. As such, we affirm Benner's conviction for child molesting, as a Class C felony.

Affirmed.

BAILEY, J., and BARNES, J., concur.